OPINION OF THE COURT
 

 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 

 This appeal requires us to reconcile two contradictory federal policies. The first is embodied in the United States Arbitration Act. Act of July 30, 1947, Pub.L. No. 80-282, c. 392, § 1, 61 Stat. 669 (codified at 9 U.S.C. §§ 1-208). This act requires a federal court to stay proceedings pending arbitration if issues pertinent to the dispute are also the subject of an arbitration agreement between the parties, thereby reflecting Congress’ intent to encourage both arbitration and the enforcement of contractual obligations. The competing policy is embodied in the Bankruptcy Reform Act of 1978. Act of Nov. 6, 1978, Pub.L. No. 95-598, 92 Stat. 2549. This Act significantly expands the jurisdiction of bankruptcy courts and is based on the notion that to protect the positions of both the bankrupt and its creditors, bankruptcy actions should not be subject to unnecessary delay and all claims and issues relevant to such actions should be resolved in one expeditious proceeding. A conflict arises when, as in the instant case, the debtor in a bankruptcy action sues on a contract and the defendant demands a stay of the bankruptcy proceeding pending contractually agreed to arbitration. Today we hold that because the underlying purposes of the Bankruptcy Reform Act impliedly modify the Arbitration Act, the granting of a stay pending arbitration, even when the arbitration clause is contractual, is a matter left to the sound discretion of the bankruptcy judge. Finding no abuse of discretion here, we affirm the order of the court below.
 

 I.
 

 In 1981, the Ludwig Honold Manufacturing Company went into bankruptcy and Fred Zimmerman, appellee, was appointed trustee. Prior to that time, Ludwig Honold had agreed to supply Continental Airlines, Inc., appellant, with four plane-mate vehicles. The contract for this transaction provided that if there were any delays in delivery, Continental could get “liquidated damages” amounting to $10,000 per vehicle per day of delay, up to $200,000. The contract also contained an arbitration clause declaring that “[a]ny controversy between the parties with respect to this agreement shall be settled by arbitration ... [and that t]he decision of the arbitrator shall be final and binding .... ” App. at 15a.
 

 There was a delivery delay and, pursuant to the liquidated damages clause, Continental withheld $200,000 of its payment on the contract. After Ludwig Honold went into bankruptcy, trustee Zimmerman initiated these adversary proceedings against Continental in the bankruptcy court alleging that Continental’s claim to the liquidated damages was improper. Continental applied for a stay of the bankruptcy proceedings under the Arbitration Act, 9 U.S.C. § 3, so that the contract dispute could be resolved by arbitration. The bankruptcy court declined to enter the stay, reasoning that:
 

 In view of the enactment of the Bankruptcy Reform Act of 1978 and the urgent need for the prompt administration of adversary proceedings, we conclude that, in the case before us, the arbitration clause is not binding on the parties and that we may determine this case by trial rather than by arbitration.
 

 22 B.R. 436 at 438. Continental now appeals that ruling.
 
 [1]
 

 
 *57
 
 II.
 

 The stay provisions of § 3 of the Arbitration Act
 
 [2]
 
 “apply only to the two kinds of contracts specified in §§ 1 and 2 of the Act, namely those in admiralty or evidencing transactions in ‘commerce.’ ”
 
 Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,
 
 388 U.S. 395, 401, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967). We have no trouble in concluding that a contract for plane-related equipment between Ludwig Honold, a Delaware-based manufacturing firm, and Continental, a California-based interstate air carrier, is a contract evidencing a transaction in commerce. Thus, § 3 applies to this case and, unless the bankruptcy court is exempt from the commands of the Arbitration Act, that court’s duty is clear: “Section 3
 
 requires
 
 a federal court in which suit has been brought ‘upon any issue referable to arbitration under an agreement in writing for such arbitration’ to stay the court action pending arbitration .... ”
 
 Id.
 
 at 400, 87 S.Ct. at 1804 (emphasis added). The court below concluded, however, that the Bankruptcy Reform Act impliedly modified the Arbitration Act and thereby exempted bankruptcy proceedings from the otherwise mandatory commands of § 3. Because this decision involves the choice and application of a legal precept, our review is plenary.
 
 Universal Minerals, Inc. v. C.A. Hughes & Co.,
 
 669 F.2d 98 (3d Cir.1981).
 

 As the express provisions of the two federal acts create, but do not dispose of, the present jurisdictional conflict, we must look beyond the statutes themselves, to their underlying purposes and goals, to resolve the controversy. We turn first to the Arbitration Act.
 

 A.
 

 At the outset, we recognize that there is a strong federal policy favoring arbitration as an alternative dispute resolution process.
 
 Demsey & Associates, Inc. v. S.S. Sea Star,
 
 461 F.2d 1009, 1017 (2d Cir.1972). The Arbitration Act gives effect to an additional federal policy favoring enforcement of contractual obligations. As the Supreme Court has noted, the underlying consideration behind requiring stays of proceedings pending arbitration is “the unmistakably clear congressional purpose [in enacting the Arbitration Act] that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.”
 
 *58
 

 Prima Paint Corp.,
 
 388 U.S. at 404 and 404 n. 12, 87 S.Ct. at 1806 and 1806 n. 12.
 

 B.
 

 These policies must be juxtaposed with those embodied in the broad jurisdictional provisions of the Bankruptcy Reform Act of 1978. The basic jurisdictional grant for bankruptcy courts is contained in 28 U.S.C. § 1471.
 
 [3]
 
 That section represents an expansion of jurisdiction from the previous bankruptcy laws.
 
 See In re Brothers Coal Co., Inc.,
 
 6 B.R. 567, 570 (Bkrtcy.W.D.Va.1980). To supplement this section, Congress further provided the bankruptcy courts with specific statutory authority covering venue under 28 U.S.C. §§ 1472-1475, jury trials under § 1480, appeal rights under § 1482, and removal under § 1478. To complete the jurisdictional picture, § 1481 states that the bankruptcy courts “shall have the powers of a court of equity, law, and admiralty-”
 

 The reason for this expansion in jurisdiction is explained in the Senate Report on the Bankruptcy Reform Act: “A major impetus underlying this reform legislation has been the need to enlarge the jurisdiction of the bankruptcy court in order to eliminate the serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction .... ” S.Rep. No. 95-989, 95 Cong., 2d Sess.,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5803. While the reduction of unnecessary delays, expenses, and duplications of effort are important in all judicial proceedings, they are especially important in bankruptcy cases. The economic fragility of the bankrupt’s estate, the excess of creditors’ demands over debtor’s assets, and the goal of rehabilitating the debt- or all argue for expeditious resolution of the bankruptcy proceeding.
 

 The dichotomy between summary and plenary jurisdiction present in the former bankruptcy laws worked against expeditious resolution of bankruptcy actions because it often necessitated two essentially identical proceedings. The first, in the bankruptcy court, was needed to determine if that court had sufficient jurisdiction to resolve the dispute. If it did not, then a second proceeding would have to be started in either the state or federal district court system to resolve the controversy on the merits. The Senate Report noted that, “the liquidation of bankrupt estates and the rehabilitation of debtors” were both prejudiced by this system.
 
 Id.
 
 at 5804.
 

 The House Report reiterated the need for expanded jurisdiction in the bankruptcy court.
 
 See, e.g.,
 
 H.Rep. No. 95-595, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6007. This Report further stated that, as a result of the increased jurisdiction, “all matters and proceedings that arose in connection with bankruptcy cases” may now be tried in one action before the bankruptcy court.
 
 Id.
 
 at 6010.
 

 The dictates of the Arbitration Act, requiring stays of proceedings pending arbitration, could result in delays, expenses, and duplications similar to those previously ex
 
 *59
 
 perienced in bankruptcy proceedings because of the dichotomy between plenary and summary jurisdiction. Clearly a mandatory stay of a bankruptcy proceeding delays that proceeding. Also, since issues relating to the relationship between debtor and creditor might well be the subject of both the bankruptcy and the arbitration proceedings, duplication of adversarial effort, with a resulting increase in expense, would likely occur. Therefore, the policies underlying the expansion of bankruptcy court jurisdiction embodied in the Bankruptcy Reform Act may be relied on to resolve the conflict in the instant case.
 

 C.
 

 Despite the breadth of the language of § 3 of the Arbitration Act, and the importance of that Act’s policy underpinnings, we note that certain types of actions have been held exempt from its commands. In
 
 Wilko v. Swan,
 
 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), for example, the Court held that in a proceeding brought under the Securities Act of 1933, the stay provisions of the Arbitration Act were not mandatory.
 
 [4]
 
 In so holding, the Court recognized that the Arbitration Act was intended to allow agreeing parties to “avoid[] the delay and expense of litigation.... ” Id. at 431, 74 S.Ct. at 184. The court found, however, that this purpose conflicted with § 14 of the Securities Act, which declared void any “condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision” of the Securities Act. 15 U.S.C. § 77n. The conflict arose because the Court found that the “[contractual agreement] to arbitrate is a ‘stipulation,’ and we think that the right to select the judicial forum is the kind of ‘provision’ that cannot be waived under § 14 of the Securities Act.” 346 U.S. at 434-35,74 S.Ct. at 186-87. In resolving the conflict in favor of the Securities Act, the Court stated that:
 

 Two policies, not easily reconcilable, are involved in this case. Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment. On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act.
 

 Id.
 
 at 438, 74 S.Ct. at 188.
 

 In the instant case, as in
 
 Wilko,
 
 the competing policies, both representing important congressional concerns, are not easily reconcilable. They are both equally specific and focused and in giving a preference for either, the effectiveness of the other will be proportionally diluted. Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation’s commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction.
 
 See
 
 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy
 
 *60
 
 court.
 
 [5]
 

 III.
 

 Thus, reversal in the instant case depends on a finding that the bankruptcy court below abused its discretion in denying the requested stay. A lower federal tribunal abuses its discretion in refusing to grant applications such as that present here only when its action is arbitrary, fanciful, or unreasonable.
 
 Evans v. Buchanan,
 
 555 F.2d 373 (3d Cir.1977). Considering the policies underlying the new bankruptcy code and the importance of the resolution of disputes to the underlying bankruptcy proceeding, we find no abuse of discretion here.
 

 IV.
 

 The order of the bankruptcy court will be affirmed.
 

 [1]
 

 . This is a direct appeal, by agreement of the parties, from the bankruptcy court to the court of appeals. 28 U.S.C. § 1293(b). Initially there was some question as to whether the order appealed from,
 
 i.e.,
 
 the denial of a request for a stay, was final or interlocutory and, if the latter, whether it was appealable under § 1293(b). All such uncertainties were resolved in favor of appealability by
 
 Coastal Steel Corp. v. Tilghman Wheelabrator Ltd,
 
 709 F.2d 190 (3d Cir.1983).
 

 In
 
 Coastal Steel,
 
 plaintiff, an American company, contracted with an English corporation
 
 *57
 
 for the construction of a manufacturing plant to be built in New Jersey. The contract provided that all disputes would be resolved by English courts under English law. Disputes arose and, after filing for bankruptcy, plaintiff began adversary proceedings against defendants under the contract. Defendant Tilghman moved to dismiss, citing,
 
 inter alia,
 
 the forum selection clause. Defendant Wheelabrator joined. The bankruptcy court denied the motion and both defendants appealed. Plaintiff argued before us that under 28 U.S.C. § 1293, our jurisdiction was limited to review of
 
 final
 
 orders from bankruptcy courts and that jurisdiction was absent here because the denial of a motion to dismiss is not a final order. In accepting the appeal, however, we reasoned that after
 
 Northern Pipeline Construction
 
 Co. v.
 
 Marathon Pipe Line Co.,
 
 - U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), 28 U.S.C. § 1293 was no longer operational and, therefore, 28 U.S.C. § 1292 governed the issue of appellate jurisdiction. We concluded that the case met the ap-pealability requirements of § 1292.
 

 Coastal Steel
 
 is controlling in the instant suit because
 

 [a] motion to dismiss an action in order to give effect to a forum selection clause is in practical effect an application for specific performance of that contractual provision. It is analytically indistinguishable from a motion to stay an action at law pending arbitration. Grants or denials of such orders are renewable under section 1292(a)(1).
 
 Shankeroke Coal & Supply Corp. v. Westchester Service Corp.,
 
 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935) ....
 

 Coastal Steel Corp.
 
 v.
 
 Tilghman Wheelabrator Ltd.,
 
 709 F.2d 190 at 194 (3d Cir.1983).
 

 [2]
 

 . This section provides that:
 

 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
 

 9 U.S.C. § 3.
 

 [3]
 

 . Section 1471 of title 28 provides:
 

 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
 

 (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.
 

 (e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.
 

 28 U.S.C. § 1471.
 

 [4]
 

 .
 
 See also American Safety Equipment Corp. v. J.P. Maguire & Co.,
 
 391 F.2d 821 (2d Cir.1968), holding that certain antitrust actions are exempt from 9 U.S.C. § 3.
 

 [5]
 

 . The only other federal court to address the issue at hand,
 
 i.e.,
 
 the interrelationship between the Arbitration Act and the Bankruptcy Reform Act, reached the same conclusion. See
 
 In re Cross Electronic Co.,
 
 9 B.R. 408 (Bkrtcy.W.D.Va.1981).